In this case, Rachel Schaar versus Lehigh Valley Health Services, Inc. Mr. Duratsion. Yes. Did I get that right? Yes. Good, okay. Good afternoon. I'm David Duratsion. I represent Rachel Schaar. I'd like to reserve three minutes for rebuttal. Would you say three or two? Three. You may. That request will be granted. Thank you. In this case, this is an FMLA case in which the employer invited the lower court to radically revise the burden that an employer has under the statute and under the regulations, and the district court took them up on that invitation. The limited question on the appeal, and admittedly,  the limited question on the appeal is that we've raised whether a district court can never consider the subjective reports of an FMLA claimant in determining whether they have a serious medical condition. There is no court that has ever said that. The closest that any court has come is to say that the claimant can't walk in devoid of medical information. Any other court that has considered this issue where there has been both medical information, which there was in this case, and the claimant's subjective complaints has said, we will consider both. This district court chose not to do that, and that is inconsistent with the statute and the regulations. Does it matter that your client didn't provide her lay testimony or her subjective complaint, to use your phrase, in a timely fashion? She sort of gave it after the fact. Well, the regulations as they existed at the time, there's a reference in the red brief to the regulations having changed last December, which aren't really pertinent to this. The regulations as they existed at the time were that the employee didn't have to give notice until three days after the first missed day. She actually gave notice on the first missed day by providing the doctor's note that she did. Well, no, but the note she gave, what's odd to me about the case, is she provides a note and, you know, I'm not sure what else she could have done other than post it. I mean, but that note said two days. I mean, so if I'm the HR administrator of the company, that's sending me a message that the statute is not triggered, right, because you don't have the three days. And then you've got this apparent worsening or continued problem with her condition over the weekend. You're right on Wednesday, but you're not right on Tuesday. And Tuesday is the important day. She provides the note, and maybe it was Thursday, but I think it was Wednesday. She provides the note on a day saying she would be out for the next two days. Yeah, Wednesday and Thursday she's out sick with a valid excuse from the previously scheduled vacation day. Agreed. But when she returns on Tuesday, it's uncontested that she says to her supervisor, whose first reaction you will recall was, I could terminate you for this, and is later told apparently by HR and apparently it's uncontested that that conversation happened as well, you can't fire her for this, comes back and says, well, by the way, I was sick from the time I left until yesterday. So we have actually, based on the subjective report, five days. Now, the irony here is. Does it matter that that was after the fact? It does not because she could have, once she's given notice, and since she was excused for the other two days anyway because she had previously scheduled those vacation days, and, in fact, in her testimony, in her deposition, she basically said, I didn't even know I had to do that. And that's the important factor here. And the reason why I started out by making the rather expansive statement that this is a radical shifting of the burden of what the regulations impose on the employer. Because what the regulations and what all courts have said, including, I may be bold enough to say, two district court decisions by Judge Hardiman and Judge Van Antwerpen, is that the employer does have a burden. The employer's burden is once they know that it's possible that the FMLA applies, they have to inquire further. Counselor, let me ask you this. You know, you've done some creative lawyering in this case, and I give you credit for that. But this wasn't ever an FLMA case. This was a case where she had a doctor's excuse. She took off two sick days. She had sick days. She had already had two vacation days, and she comes back to work. Okay? Okay. All right. She never told the employer that she wanted to convert any of these days that she had into FMLA days, which are unpaid days. She doesn't have to. She doesn't have to. Then that's the point. Right. But here's my point. These facts don't create notice. Under these facts, there's no way for that employer who's dealing with paid days to be on notice that this employee wants to convert paid days into unpaid days under FMLA. Judge Fisher, I think the problem with that analysis, quite honestly, is that it literally gives license to employers to turn a blind eye. There's nothing unequivocal about it. No, no. I would say that this gives license to employees, after the fact, to go back and recreate the status of the leave. I don't think that concern would work under the new regulations. So I don't think if there is that concern, it's not a long-lived concern because the new regulations changed the rules a little bit. Tell me when she first uttered the words, family and medical leave. Well, she never did. She never did. Because as she testified in her deposition, it never occurred to her that it even applied. But that's the reason why the regulations placed the burden on the employer, because they should know that when an employee says, I've been sick and unable to work for five days, that that is … Why would an employer take pay away from an employee? Because that's what HR departments know to do. That's why the burden is on the employer, because they have HR people. In this case, you're not talking about a small organization. You're talking about perhaps the largest employer in the Lehigh Valley. Granted. With an HR department, with in-house attorneys that handle these cases all the time. If I'm an employee and I get my paycheck and I see I'm docked today, I'm going to come to somebody in HR and say, well, wait a minute. I asked for sick leave and vacation leave. Why did I get docked today? I said, well, we treated it as FMLA leave. Well, I think if you add the following… I think that's what the hospital should do. Well, I think if you add the following statement to that, it might make the employee's opinion a little different. And, by the way, if we don't do this, we're going to fire you. Because they could. In other words, that's exactly the case that's brought up by the defendants in Reed Falcone, where the employee was given the option of not taking FMLA days and taking a, by far, much more generous employer-granted leave provision. She opted to do that and then found herself unemployed. And, obviously, the court said, you know, you make the bed that you lie in. But she had the choice. Rachel Scharr didn't have the choice. Rachel Scharr didn't have the choice. You just described your own dilemma. Correct. In other words, if the employer, if somebody in HR, if Ms. Kromczak had said, we can consider this FMLA, but you won't get paid, which I'm not sure that that actually would have worked in practice in this case, because their policy would have required her to have exhausted her other options first. So she actually wouldn't have been docked pay for those two days. Which is another reason why it would not have been family and medical leave. And it doesn't quite work like that, because the regulations allow the employer to require the employee to exhaust other paid options before you hit FMLA. It still counted as FMLA days, though. No, I think what you're arguing maybe goes to the other facet of this case, is you're basically saying that FMLA regulations trump any work rules. I don't think they trump any work rules, but they certainly – But they're work rules in this case. Well, there were no work rules in this case that are applicable to this. Because the only closest we come to a work rule is the one that she's supposed to make a phone call. She's make a phone call. I understand that. But you also have the counterbalancing facts in this case, where the doctor told her, don't worry about that, just post a note and I'll deal with it later. For the first two days. Well, I understand that. But she's out anyway, and she comes back, and the first word's out of her mouth. And, again, undisputed, is I've been sick for the last five days. Those are words that, again, I hate to sound like the last two cases. But it's not a situation where she gets fired. She comes back from two days of excused sick leave, two days of previously scheduled vacation leave, gets fired, and then two days after she fires comes back and says, oh, by the way, I forgot to tell you, Friday, Saturday, Sunday, and Monday I was in bed sick the whole time. I guess the point you're making is that before she was fired, she made clear to the employer that she was sick longer than the two days for which she had been excused. And I think temporally, even before Ms. Kromosak says to her, I could fire you for this, I think the way I read the deposition testimony was literally the first conversation was, I've been sick for five days, and then we go into a whole other area. And your argument is that as onerous as it may be on the employer, the federal law requires that the employer to know at that moment that her FMLA rights are triggered. I don't know if it's at that moment, but in this case you do have Ms. Kromosak directly. If not at that moment, then when? After lunch, after 5 p.m.? Perhaps after lunch, and I'll tell you why I say that. Because the first thing Ms. Kromosak does in this case is go where she should go. She goes to the HR representative and asks, what do I do? Now, we don't know what happened in that conversation, but what we do know is she comes back and says, well, I can't fire you because you were out. We do know that there was this HR conversation, which is the right thing for her to do. That is what she should have done was to go to HR and say, what do I do? It's the HR people that really should know in most organizations. And apparently the answer was, hey, you can't fire her for that, but you can fire her for other reasons if you have an independent reason. And your point is you're entitled to a trial because the record is ambiguous regarding what was the true reason. I'll take ambiguous as a characterization of the record. I think it's pretty clear that Ms. Kromosak did not have any independent basis other than things that she created and later found she couldn't support. I'd like to just jump. Can I just ask a question? Sure. I apologize. We've asked you a lot of questions. That's what I'm here for. And you've answered them all. You certainly have. Should we follow the Eighth Circuit rule and require at least some medical evidence? I'm concerned about malingering, to be very frank with you. I understand that. And what I was going to say a little bit earlier was there should be some medical evidence, but there was some medical evidence. And, in fact, if what had come back was go back and see Dr. Twaddle and see what he says, the irony is she would have been doubly protected because she would have had more than one treatment by the doctor because an examination is considered a treatment, and she would have had the ongoing course of therapy. Dr. Twaddle stated in his deposition that in a circumstance like this where maybe it would last two days, maybe it would last five days, he would really have had no other basis than to say, well, if you say you were that sick, I can't say you weren't. And that's, again, the irony with this case because if they had only asked her to go down the corridor to see their own doctor, their own employee doctor, we would have not been in this scenario, which was their obligation to do. They do have that obligation under the regulations. If I can follow up on Judge Van Anterpen's question, you're not asking that we adopt the Ninth and the Fifth Circuit rule, which, in essence, as I understand it, says all you need is the employee to show up and say, I'm really sick for three days, trust me, and then that's enough to trigger it. Even, I think, in the Ninth Circuit case, Marchesheck, the doctor had said no. There was a contradiction between what the doctor and what the layperson said. You don't want us to go there. I don't think you need to go there. I think that it's reasonable at that juncture for the employer to say, well, I need a doctor's note. And that would really be, I think, on the ground what would happen. Somebody would come in and say, you know, I've been sick for the last week, sorry, but I'm out. Well, can you get me a doctor's note? I mean, that's the right answer. And the regulations, obviously, and the statute permit that and perhaps require it. So you get the foundation is the doctor, but the employee can build upon that under the circumstances. I think that's what at least the Sixth Circuit has said that, yes. So if we find that your client had a serious health condition and she gave notice, where are we? I assume I have additional time to answer that. You can always answer a question. Well, okay. And perhaps I should say this rebuttal, but let me just briefly touch on it. The Lehigh Valley Health System has raised the issue of what the standard of proof is. And we briefed this and we supplied you with some additional precedent, again, from the Sixth Circuit, that addresses the issue of what the effect of gross on the FMLA is. Obviously, I think you should find that, A, that the employer has a burden of proof. Whether you call it an affirmative defense, which is sort of what the Department of Labor regulations deal with it as, or you want to shoehorn it in under the 1991 Civil Rights Act or under Pricewaterhouse, the important question is where the employer uses as a reason to leave, do they have to prove that they would have taken the same action absent the leave? And whatever you call it. And there's, as I said, three rationales as to how you can get there. One is an affirmative defense. One, under the 1991 Act, which some circuits have said. Some, one directly under Pricewaterhouse, which is sort of what the Sixth Circuit said in Hunter. You get there. I think that, as Judge Hardiman mentioned, if you are going to analyze this under McDonnell and Douglas, then the evidence of the independent basis has certainly been, doubt has been cast on it, sufficient to survive summary judgment under that standard. And so where are we? We go back to trial on the issue of, on basically all the issues of the case. That's enough to get you back to trial. I think it is, and I know my colleague disagrees with that. It's a pretext trial, isn't it? They've proffered legitimate nondiscriminatory reasons, and you say they're wholly created. I would analyze it under a direct evidence standard because of the double statements of, we're taking this leave into account. So if you establish that it's, if you accept that it's protected leave, they clearly took that into account. And then the question is. You want the chance to argue both mixed motive and in the alternative, McDonnell-Douglas? Again, you could call it mixed motive, or you could use it as an affirmative defense. And the only difference, and it is an important difference. If it's mixed motive, the defense is only as to damages. Liability is established by the statement if it's accepted as direct evidence. If it's an affirmative defense, which is what the regulations make it sound like it is, and I believe the Fourth Circuit has characterized it as that, but that's quoted in the brief. If it's not the Fourth Circuit, I accept that. If it's an affirmative defense, it would go to liability. So I think it's an important distinction, and if you're going to tackle that question, it would be helpful to delineate which approach. We'll have you back on your time. Thank you. Mr. Sprague. Good afternoon, Your Honor. My name is Jonathan Sprague. I'm here on behalf of Lehigh Valley, the employer. And in my opinion, the district court can be affirmed on the serious health condition grounds in that there's no genuine issue of material fact. That is, the record does not contain any evidence that a health care practitioner instructed or authorized or recommended that the SHAR was, you know, have bed rest or because of being incapacitated because of an illness. Well, now Congress passed the FMLA to help families keep jobs despite illnesses. Requiring a strict pleading type notice here, doesn't that really kind of contravene that policy? Your Honor, I understand the Congress's intent, but it's a balancing act. In other words, you're balancing the serious, with the emphasis on serious, medical needs of the employee versus the employer's legitimate managerial interests. In our case, again, in our case, we have somebody who had a physician, who consulted with that physician, who got a note from that physician that said, two days, unable to do the work for two days. And that's what she received. She never went back to the physician contemporaneously with her return. Right. The question is whether, as Judge Van Antwerpen said earlier, whether that doctor's foundation can be built upon by her own representations, that she remained sick for more than two days. And one of the challenges I think that you have, I'd be interested in your explanation, is that 29 CFR 825.115, which was in effect at the time, it's currently, I think, .123. That relates to the employee's ability to perform the job. That regulation specifically requires that only a health care provider can say that you cannot perform. Correct? Correct. All right. The other regulation, the one that applies in this case, regarding incapacitation, which is .114, lacks that requirement. So how can we accept your argument that the doctor has to give the three days dispensation when the regulation does not require a doctor to do that, when a very nearby and adjacent regulation does require the doctor to do it? I'm saying when there's competing regulations, it is a matter of public policy. And under the circumstances of this case... Mr. Sprague, move that microphone up a little bit. And under the circumstances of this case, that it is not unreasonable, it is not onerous, nor do I believe is it violative of the statute to simply require a health care practitioner to provide some proof, not a pleading, not a brief, but some proof that the individual is incapacitated or unable to perform his or her work duties for more than three consecutive calendar days. But the statute doesn't say that. The statute doesn't say that. Neither does the regulation. But it speaks in terms of a balancing. And I think in order for the balancing of the serious medical needs of the employee with the employer's legitimate managerial interests, and I don't believe that that is onerous or that it's going to provide the employer with a way to deny basic fundamental FMLA rights to multiple employees. It's not that difficult to do. But if we accept your argument... Could it be after the fact? Yes, I believe it can be after the fact. Absolutely. If we accept your argument, though, we'd be an outlier. The Fifth and the Ninth Circuit are way over on one side saying the malingerer can show up and say, trust me, right? Okay. Let's assume we don't want to go there. But you've got the Eighth Circuit sort of in the middle saying what your opposing counsel is saying, as I understand it, which is, look, if you have a valid note from a doctor saying you're truly incapacitated for some period of time, not the full three days, you can build on that with your own testimony. Are there any circuits that have said unequivocally that a doctor requires or the doctor is the exclusive grounds for the three-day dispensation? There's probably no circuits that have said that. You do have a couple of district court cases. Yeah, some district court cases. Where did the circuit go in your way? I'm not aware. I'm trying to see where they've found support for that. Your Honor, if I had a court of appeals decision, I would have cited it. You would have given it to us. I would have got it in a 28-J or you would have got it in a brief. We're on basic. This is new ground. This is rather exciting. It's very, very new ground. And, again, but that's only if it's a serious health condition. And I want to back up a little bit and say, okay, the worst-case scenario for my client, you take a hybrid. The third circuit takes a hybrid approach. It says, okay, you have a basis medical excuse plus what I call self-serving assertions. But that's enough for the serious health condition. You then get to the issue of notice, which is different than whether a serious health condition exists. And if you get to the issue of notice, you go to your standard Sarnowski, whether there was reasonably adequate information under the circumstances. And that is critical because you look at the circumstances of this case. Judge Fisher addressed a little bit in his preliminary questioning. All right, number one, in Sarnowski, what did he have? He had quintuple bypass surgery. All right? And then he says, a couple weeks later, six weeks later, he says, I want to take some time off because I have to be monitored and I may need more heart surgery. And the employer says, whoa, whoa, whoa. You know, whatever. He gets fired. All right? All right? Look at the circumstances. Here, there's no history. There's no precedent for urinary tract infection or bladder infection. This is not a situation where you have a plaintiff where the employer knows that there are medical problems that are recurring or lingering and then should have inferred, like reasonably inferred from the notice. You don't have a long history, but you've got a doctor's note saying two days, and then that's followed up pretty quickly with the employees saying, no, it wasn't really two days, it was five days. Doesn't the light go off right there? I mean, I know this puts a lot of heavy burden on the HR administrator, but why doesn't the light go off right there? Whoops, we're past the three days. I'm on notice. I better look into this further. What's the matter with that? The problem with that, why the light didn't go off. And, again, we're looking back in time. We're not in the heat of the moment. But look at the circumstances here. You had a medical receptionist who had to work Wednesday and Thursday. She didn't. She got a note saying she had a febrile illness. That was it. It wasn't more specific than that, which I understand is a fever or an elevated body temperature. That was it. That's all the note said. She was able to do her duties. Then she had long-time vacation days scheduled for Friday. She had a weekend when she wasn't scheduled to work, and she had a Monday where she was not scheduled to work, and she comes back on Tuesday. So the rational inference when she walks in on Tuesday is she's fine. Yes. The problem is, in the record, she said, oh, it got worse. I was in bed all weekend, right? I mean, the assumption was she may have gone to Mexico for five or six days, right? I mean, if your client thought she was a malingerer, she gets the two six days. She builds them onto her vacation days. And the weekend, it's a nice little holiday. But she comes in and immediately tells your client on Tuesday she was really sick all weekend. And didn't the note say she wasn't able to pursue her duties at work today or tomorrow? That is correct. That's what it said. So they had written notice she's out for the two days. Wednesday and Thursday. But she's off Friday and Monday and the weekend, and she never requested to have those PTO days called pay time off days or vacation days converted into two days. She doesn't have to. That's part of the onerous nature of the FMLA is that you, your client, needs to look into this, needs to divine, based on the circumstances presented to the company, when this act is triggered. Tell them she was sick the whole time. I don't believe that that is reasonably adequate information under these particular circumstances, given the lack of history and the timing. Otherwise, what it is it imposes is a clairvoyance. And it's an emphasis, an expectation that an employer be clairvoyant about an employee's situation. There's nothing clairvoyant about knowing she was out Wednesday. Your client knew she was out Wednesday through Monday. And your client knew the reasons why she was out. We knew what she told us. Well, you knew what her doctor told you. On two days. And then you knew what she told you. Yeah. That's not notice? I'm not saying you need to believe her. Maybe she was lying on Tuesday. Who knows? But why isn't that notice? I don't believe that's reasonably adequate notice under the circumstances. What else should she have said or done? What she should have done is had the consult with Dr. Tuato. All right, but now we get back to my initial question. We've got a regulation. I forgot the number. 0.115, I think. No, 114. 0.114 does not require a doctor's note. That's the one that's operative here. 0.115 does require a doctor's note. Every doctrine of statutory construction of which I'm aware sends a pretty strong signal to us that when 114 does not require a doctor's note and 115 right next to it does require a doctor's note, we cannot impose that requirement on 114. Well, perhaps it's not a doctor's note. Perhaps it's just additional information. It could be oral. It could be something that could tip the balance into that reasonable adequacy because otherwise it becomes, she might have said a note from her neighbor. All right, so now you've said it could be oral and it could be from her. Well, that's what we have here. What else could she have said or done? When I asked that question a minute ago, you said she could have gone back to Dr. Tuato. Now I think you've properly moved away from that and said, well, okay, you don't need a doctor's note perhaps. What else could she have done? She could have had, for example, Dr. Tuato, orally. Not a note, but orally. Just orally state. Well, no, I was using the word note perhaps out of school. 115 says a health care provider must say that the employer is unable to perform. It doesn't say you need a written note. My point is, is expert testimony the doctor required, or can it be a combination of both? 115 says it has to be the health care provider. 114 doesn't. Again, I'm concerned about the fact that, you know, we go to law school, we take civil procedure, we're used to detailed requirements and pleading. These are just workers out there. It's an informal setting. They don't know. Did you ever look at an employment manual from a company? I mean, you really expect her to know just what to do. And believe me, we're all concerned. I'm not going to tip my hat here. We're all concerned about malingering. We don't want to see that happen. But on the other hand, we don't want to impose some hyper-technical requirement here on employees. You know, you have to say magic words in order to make this thing work. And I have trouble seeing why what she did isn't enough. Well, if this court finds, then, that Char has satisfied serious health condition and the notice requirement, I believe there's still evidence of record, both as to retaliation and interference, where entitling Lehigh Valley to summary judgment. I believe as to retaliation, I want to make this very, very clear. As to retaliation, there was discussion of McDonnell Douglas. All right. Pretext. Well, prima facie case, you have to take FMLA leave. And in the Erdman decision, where the- I'm familiar with that one. Oh, yes. Where the taking of FMLA leave is invocation of FMLA rights. In no way, shape, or form, even if I concede, or not concede, or whatever, or concede the point that she made an FMLA qualifying statement to her office manager. Did Char invoke FMLA rights? She did not. She just said, I was sick. That is not retaliation. What are we retaliating against her for? It's not retaliation. So, summary judgment. But why couldn't it be interference? Interference is a different beast. Interference. Interference, as I understand it, the company's thought process, if it were liable, would be, well, uh-oh, this woman's going to be a problem. She's going to have all these federal rights now. We better get rid of her now before we have her out on FMLA. Right. Interference is different. You don't have the McDonnell Douglas paradigm. It doesn't apply of interference. It's almost something akin to strict liability. But I think we demonstrated that even had she not taken the FMLA leave, she still would have been discharged. I want to make it very clear. If you look at the discharge notice, the grounds were reconciling accounts, deposits, whatever. But also she did not follow the employer's call-out policy. Now, you may think that's unnecessary or antediluvian or shouldn't have been required. But she didn't follow it, notwithstanding the note from Dr. Twalwell. It was not enough to her employer. And that is not direct evidence for purposes either of retaliation or interference. And I think here the evidence shows, and there's no genuine issue of material fact, that Char would have been discharged even had she not taken the leave because Pat Kromzak, the office manager, received information on the 20th, again, showing additional errors regarding inattention to detail, math mistakes. Doesn't Callison help you on that? Absolutely. Because in Callison, the city of Philadelphia said, if you're going to be off, you call us in. You call every day if you're going to be away from your home. And he didn't do it, and he was fired. And I think, and Judge Van Antwerpen, I understand your sensitivity. I don't want employees ambushed either. I'm an employee. But this is a situation, Your Honor, where you have putting yourselves in the office manager's shoes. You have somebody coming back from being away for five days, two of which were vacation days, and a weekend. It's not as if she was off Monday through Friday, a work week, and showed up the following Monday and said, oh, my word, I was so sick. No. She was, this was long. I mean, so put yourselves, maybe an imaginative projection, into the shoes of the office manager. What is she supposed to think? And, again, this may not be a critical point, but remember, Scharr received FMLA leave for almost the entire month of December in 2003. Now, opposing counsel. That doesn't help you. Oh, no, I think it does. It shows there's not a hostility. In other words, she requested it, and she got it. Well, that cuts both ways, doesn't it? It could also cut as, oh, boy, we don't want to go through this rodeo again. Absolutely. That's not a possible inference here? No, it's not. Your Honor, we've talked about inferences a lot today in other matters, but I think it's highly speculative, Your Honor, in all due respect. You can infer that we're dubious about inferences. Yes. Well, I've seen my time. I have no time remaining. I want to thank you for the Court's attention and ask that you affirm. Thank you. Okay, thank you. Mr. Durasian? Well, I'm certainly glad. Now, if you didn't have anything to say, we wouldn't infer. I'm certainly glad I took three minutes and not two minutes. First of all, and I know the whole panel probably knows this, and I'm positive Judge Hardiman knows this, Erdman actually held the exact opposite of what Mr. Sprague just said it held. It rejected the implication. That's okay. That was a district court case. It doesn't matter. No, he was elevated on high at that point. It actually said the opposite. It rejected the implication in conoscente that you could not have a retaliation case absent actually taking of leave. In fact, the core of it. No, but you just mischaracterized what your opposing counsel said. He said, and I thought it was a valid distinction, but maybe I'm not remembering my opinion as well as I should. His distinction is in Erdman she invoked it, and they pulled the trigger and fired her before she invoked it. She didn't take it because they didn't let her take it. And the holding in that case is it would be absurd to say that you can't fire someone after they actually take it, but if you cut them off before they're eligible, before they do take it. Here, there's no invocation of it before she's fired. Actually, that's the issue that ultimately should be tried, is whether there was an invocation, whether saying I was sick for five days becomes an invocation. Is that sufficient information? Without getting into what's an inference and making this the third case where that's an issue today, it is unquestioned that under the regulations and under almost, in fact, every decision that I'm aware of, the burden is on the employer to ask the next question. And Mr. Craig suggests, well, she could have gone to Dr. Twaddle. She could have gone to Dr. Twaddle. And, again, I understand the distinction between what the Fifth and the Eighth do and what pretty much everybody else is doing. But she wouldn't have known to do that because she's feeling fine, more or less. And nobody says to her, well, we really need some more information, which I think under Judge Hardiman, your suggestion about maybe they're lying, the FMLA provides for that. There's a regulation that basically allows the employer to say, I don't believe you. Well, that's why they have to look into it. Right, and that's exactly right. Now, and I don't think. I want to make sure I understand. When were they to ask this next question? Well, they could have asked it. I mean, Ms. Corbis could have asked it immediately. You know, can you get me a doctor's note that says that? I mean, she could have asked that immediately. She could have asked that. For what? This goes back to the notice issue. What are you going to ask the next question for? What's the purpose? Well, here's the interesting. Let me answer it this way, and it will be an answer to that question. She obviously, in fact, had sufficient notice that it led her to go to HR to ask, what do I do about this leave? So she had enough information to ask that next question. So the next question was, are there appropriate responses? When was that question asked? I believe it was asked perhaps that same day. It was within a couple of days. The day she returned. Yes. It was within a couple of days. She wanted to make sure she got her sick leave, that she put the note on the door for. I'm sorry. Chromzack asks. Char tells Chromzack, I've been sick for five days. Chromzack says, I think I can fire you for that, and then goes to HR to ask that next question. Now, the next question Chromzack should have asked Char or HR should have asked Char was, well, can you get me something on that? Can you get me medical information? Even if it came down to, we don't believe you. Because if they said, we don't believe you, there's specific provisions under the FMLA for what happens and reconciliations and all sorts of things. I just want to, I know my time is up, but if I could just address the Callison issue for a second. I don't think Callison helps. Because in Callison what happened was it was not an invocation that the person violated. It was the ongoing. The city had an ongoing, which I know you all know, that the city had an ongoing policy. If you're going to be out on sick leave or on FMLA leave, you have to call us and let us know that we're even more, you have to actually be home. There were all sorts of things. It wasn't a matter of invocation. This is a matter of invocation. The invocation of the leave in its beginning is the posting of the note. So did she make a phone call? No. But I think the evidence, the undisputed evidence is that we're mitigating circumstances by the doctor. I think it makes a difference here, actually, that the doctor worked in the practice and said, don't worry about that, I want you to go home immediately because I'm concerned about you. And the deposition pretty much comes across that way. This person needed to leave right away. And I think that makes a big difference in this particular instance. I do think this is a discrimination case for the reasons that I set forth in the brief, and I don't want to belabor that unless the panel has questions about that. Okay. Thank you. Thank you. Okay. We thank counsel for their arguments, and we'll take the matter under advisement.